# Columbia Insurance Company *versus* Masonheimer.

1. A mutual insurance company in its policies reserved the right to cancel them for non-payment of assessments for thirty days. Shoemaker insured in the company; an assessment on him being unpaid less than thirty days, he assigned his policy to defendant with approval of the company. After the assessment had been unpaid for thirty days, the secretary informed defendant "the company cancels all policies on which assessment is not paid in thirty days." In a suit for assessments afterwards made against defendant, *Held*, that the company was bound by the letter of the secretary, and it justified the defendant in believing that the policy was cancelled, and if he acted on such belief, they could not recover the assessments against him, although the policy had not been cancelled on their books.

2. The secretary was the proper organ between the plaintiff and defendant; it was within the scope of his authority to inform defendant of the cancellation of the policy, and this was binding on the company.

May 13th 1874. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Cumberland county :* No. 54, to May Term 1874.

This action was commenced before a justice of the peace by the Columbia Insurance Company against J. M. Masonheimer, and removed by appeal into the Court of Common Pleas, December 30th 1869. The plaintiffs, a mutual insurance company, declared in assumpsit for two assessments of $16.50 each on a premium-note of $330, the consideration of a policy of insurance No. 13,895, which had been issued for three years from March 28th 1868 to Daniel Shoemaker on his store, which he afterwards sold to the defendant and assigned to him the policy of insurance on the 10th of August 1868; the defendant giving to the plaintiff his premium note, and they approving the assignment.

The note was as follows :—

"$330. For value received, in policy No. 13,895, issued by the Columbia Insurance Company, I promise to pay the said company the sum of three hundred and thirty dollars, in such portions, and

[Columbia Insurance Co. v. Masonheimer.]

at such times as the directors of said company may agreeably to their act of incorporation require.      J. M. MASONHEIMER."

Dated August 10th 1868.

The following was one of the conditions of the policy : " Whenever any assessment shall have been declared and demanded by the company, or their agent, and the insured shall for the space of thirty days refuse or neglect to pay the same, the company may, at their option, cancel the policy of insurance, but retain and collect the premium-note like all others."

The case was tried March 10th 1873, before Junkin, P. J.

The plaintiffs gave evidence of the foregoing facts.

Shoemaker, who was called by the plaintiffs, testified that an assessment had been made on the note against him of which neither he nor the defendant knew when the policy was assigned.

This assignment was made August 4th 1868, and was not paid nor claimed until after the assignment.

Plaintiffs gave in evidence certificates of the secretary of the company that assessments had been made February 1st and May 4th 1869 on all premium-notes, and there were due from the defendant on each of these assessments $16.50.

The plaintiffs having closed, the defendants under objection and exception, gave in evidence the following letter from the secretary of the company :—

" Office Columbia Insurance Company.
Dec. 26th 1868.

J. M. MASONHEIMER—Dear Sir :—Yours of 27th came to hand. If the transfer was made to you after the assessment was levied, the company have no legal claim on you for its payment, but the transfer cannot alter the policy, and the company cancels all policies on which the assessment is not paid in thirty days after the same is called for.  If you have paid the agent you are all right ; if not, the company will renew the policy when it is paid.

Very respectfully,
GEO. YOUNG, JR., Sect'y.  [SEAL]"

The defendant testified that after he received this letter he supposed the policy was cancelled and effected an insurance in another company.   He returned the policy to Shoemaker and notified the company of it.

The plaintiffs in rebuttal gave evidence that the policy stood uncancelled on their books during the period it had to run, with the transfer to defendant approved.

The court after recapitulating the facts said :—

" Now we submit to you this question.  Did this letter of the secretary Young, dated 29th December 1868, mislead Masonheimer, by informing him that his policy was of no validity under the regulations of the company, unless he would pay up the as-

sessment against Shoemaker, and when this was done the company would restore the policy ?   Did this letter fairly imply that this policy was cancelled and could be reinstated only by paying up the assessment aforesaid ?   If it did, and Masonheimer chose to accept the situation, he was at liberty to take the company at its word, treat the policy as cancelled, and insure in another company, which he did.   If you find this fact in favor of the defendant, then we instruct you, that the plaintiff cannot recover ; although in point of fact the policy never was cancelled, but continued in force as appears by the books of the company.   The reason we think so is, that in mutual fire insurance companies the secretary is the active business man, and is so largely intrusted with the management of the affairs of the company, that in point of fact the directors seldom meet; and it would lead to grave injustice if the company were permitted first to intrust their secretary with their business in a general way, and then question his authority when it was found that he had misled the insured.   If a secretary informs a policy-holder that his policy is cancelled, and thereby induces him to insure in another company, the company whose officer has thus misled a member, cannot recover subsequent assessments as is attempted in this case.   The company will not be permitted to play fast and loose at the will of the directors, approve or disapprove years after, of the act of their secretary.   We say then that if the letter of 29th December 1868 misled Masonheimer in reference to the policy he held under the assignment from Shoemaker, the plaintiff cannot recover.   But if, on the other hand, this letter had not this effect, the plaintiff would be entitled to recover, as the policy continued in full force during the time it had to run, as shown by the books of the company."

The verdict was for the defendant.

The plaintiffs took a writ of error.   They assigned for error : Receiving the secretary's letter in evidence, the answer to their point, and the charge of the court.

*J. Ritner*, for plaintiffs in error.—The secretary of a company is not presumed to have authority to bind the company ; it must be shown: Williams *v.* Chester, &c., Railway, 5 Eng. L. & Eq. 497 ; Baxter *v.* Chelsea Mutual Fire Ins. Co., 1 Allen 294.

*J. Hays*, for defendant in error.

Mr. Justice WILLIAMS delivered the opinion of the court, July 2d 1874.

The secretary was the proper organ of communication between the company and the defendant, as the assignee and holder of one of its policies, and it was clearly within the scope of his authority to inform the defendant of its cancellation for the failure of the

[Columbia Insurance Co. v. Masonheimer.]

assignor to comply with the condition upon which it was issued, and for the non-performance of which the company had reserved the right to cancel it. If the policy was in fact cancelled, there can be no recovery of the assessments on the premium-note given by the defendant. It was wholly without consideration, if the contract of insurance was rescinded, after the assignment of the policy, for the non-payment of a previous assessment by the assignor. No question is made in regard to the right of the company to cancel the policy, but it is contended that it was not in fact cancelled, and that the letter of the secretary, taken in its broadest sense, does not declare that the company had cancelled the policy, but only that they had power to do it if they chose to exercise it. There can be no doubt, as already suggested, that the letter of the secretary was within the scope of his official authority, and that it is binding on the company, whether they expressly authorized it or not. The only question then is whether it admits of the construction put upon it by the defendant. It is true that it does not assert in express terms that the company have cancelled the policy for the non-payment of the assessment, but is not this the obvious meaning and import of its language? If it was not intended that the defendant should understand that the policy was cancelled, why was he informed that "the company cancel all policies on which the assessment is not paid in thirty days after the same is called for"? And why was he told "if you have paid the agent you are all right. If not, the company will renew the policy when it is paid"? What is the meaning of this language, if it was not intended to convey the impression that the policy was cancelled? That the defendant so understood it is shown by his acts. He returned the policy to the assignor, obtained other insurance, and informed the company of the fact. If the company did not mean to be understood as having cancelled the policy, why did they not undeceive him? They do not deny, but tacitly admit, that they received his letter. Why then should they not be treated as having acquiesced in the construction which he put on the secretary's communication? If he misapprehended its meaning, it was their duty to inform him of his mistake. But it is evident from the whole tenor of the letter that he understood it just as it was intended he should. If so, the letter was rightly admitted in evidence, and the case was submitted to the jury with as favorable instructions as the company had any right to ask.

Judgment affirmed.